I'm appearing for Silver Sage. Again, I'll try and reserve five minutes. This is the one on the prejudgment interest issue. I think that's right. I didn't ask out-of-circuit authority. It seems like a pretty straightforward question. Never mind, I got this wrong. Do we have authority in this circuit relative to this issue? There is Ninth Circuit authority cited by the city. I don't know that we did. There's discussion of the Wildman case, for instance. And what is that authority? In the Ninth Circuit? Yeah. The Ninth Circuit opinion that is cited is the Wildman case and FELA case, which says that it's a balancing of the equities type test for prejudgment interest. And we note a couple of major points in connection with the denial here, again, which I'll point out is the second denial from the same district judge for precisely the same reasons and the reasons that were reversed in the 2001 opinion by another panel of this Court. They used the same reverse reasons again, basically. The problem is that even if you apply the balancing of the equities test, which I think after the Kansas versus Colorado test or case, rather, is somewhat in question as to whether that's still a viable test. They did use it in that case and allow the special master to rely upon it because they said it wasn't clear as of, I believe, 1949, that Colorado would have known that they would have not had the balancing of the equities test available. So they do sort of allow that for the purposes of that review, but the general broad statement is that the balancing of the equities test is severely in question, at least as is the entitlement. So we start with that. Secondly, the problem is that if you're going to rely on the balancing of the equities, the question is why would it be equitable for the district judge to use the same reasons that were reversed by this Court to deny us prejudgment interest? What would be the balancing there? There's no balancing analysis there in terms of why that would be appropriate to do or not do, and there's nothing in there that indicates why that would be fair to my clients or even fair to the city to get a windfall on prejudgment interest for reasons that have been expressly disapproved, either A, because they were wrong legally as to who might recover under the Fair Housing Act, or B, they were wrong as to the facts in terms of what the evidence was at the trial. So if you apply the balancing of the equities test, I would suggest here that there's no real way to say that it's appropriate that SilverSage be denied prejudgment interest for that reason. There's no factor identified that SilverSage or its counsel did anything wrong during the lengthy period that this case has been pending or up until the time the judgment was entered, which might serve as a reason for a denial. I think that Wessel case, I believe, is also a Ninth Circuit case, and there the court held that because the defendants had been dilatory and so forth, that prejudgment interest was appropriate for the plaintiff, so they at least identified certain factors there from which you could bring some sort of an analysis to this problem from which you could figure out what the rules really are. The problem really here is that there's nothing really set forth. It's just I'm relying on the same reasons again. I believe the transcript says the district judge says pretty much the same reasons as last time, and that's essentially the extent of the analysis. The second issue that we mention here is that we think, given that the district judge has been focused, we believe incorrectly, on a sort of zone of protection idea in terms of standing, in terms of who might recover under the Fair Housing Act. That has been a lengthy, lengthy problem. It's caused this case to be quite lengthy, and in fact I think we had about a close to five-year hiatus, maybe six years, I'm sorry, hiatus between the time that the district judge ordered a new trial and the time that the new trial was actually held. I believe that 5, I think, was some early part of 1995 is when the new trial was ordered. It was not held until the latter part of 1999. In that time period, in terms of the docket, which Your Honors have before you, I think we show about 15 efforts on our part to have the district judge take up and complete the proceedings. But the problem always seemed to be that the district judge just did not believe that my client should recover either that much or should recover at all, and that's why she parsed the standing issues the way she did. And we thought that the law was fairly clear on that, based on this circuit's opinion in Key v. Volpe, which clearly said developers have standing to sue under the Fair Housing Act. That apparently was unpersuasive to her. She nonetheless ruled that several of the clients did not have standing to sue. Are you arguing this removal of the judge business now? Yeah, I'm sorry. I moved on to the reassignment issue yesterday. I'm sorry. Did Your Honor have questions about the prejudgment interest issue? No. Are you going to cover it all, the law of the case? We did cover it in the brief. I'd be happy to say more about it. Well, let me tell you my problem. I'm a little confused, actually. It seems to me that here you're saying that this court's 2001 decision decided prejudgment interest. Yes, that's correct. Okay. Then you got back to the district court and asked for prejudgment interest. And the district court said the Court of Appeals mandate did not give prejudgment interest back to this court. So then you went back to the Court of Appeals, to the 2001 panel, and moved to amend the mandate to, quote, allow the district court to consider SilverSage's motion for prejudgment interest, which happened. You went back to the district court and asked for prejudgment interest in law. So my question is, how is it consistent to do that in the district court? In other words, ask this court to allow the district court to address prejudgment interest and get here and say you've already decided it. If that was your position, why didn't you take what the district court said and appeal and just say the district court was wrong in saying that it couldn't consider prejudgment interest? The risk is we might say the district court's right, in which case you don't ever get to prejudgment interest. But it seems to me you're on both sides of the question. Well, I don't think we are. I don't think that we are. The district judge utilized the same reasons that it denied the or that it granted a new trial, rather, to deny us prejudgment interest after the first trial. And then we went through this lengthy period before we could get an appealable order and so forth. After the retrial, we were able to appeal and so forth. It went up. And I believe it was mentioned in the briefing. It simply wasn't mentioned in the opinion. And what happened was after we went back after the remand to the district judge, she said, well, it's not an opinion, therefore I think it's a problem and so forth. They'll have to ask the circuit whether they'll relax the mandate to let us consider it. We filed that application. There was never even a response from the city. I don't believe the court ruled on it rather promptly, but I think even before the city's response was due. They granted that. Then we went back to the district judge. So those reasons didn't become less law of the case or something, in my opinion, simply because we had to ask for a relaxation of the mandate to consider it, because arguably it should have been considered in the first opinion since we didn't raise it. But if the 2001 opinion of this Court foreclosed a, in other words, decided prejudgment interest and your view said you get it, maybe not how much, but you were entitled to prejudgment interest, as I read your brief. But then you go back to the district court and ask for it. The district court says we can't do it. So you come up here and says amend your mandate to let the district court do it. It seems to me that's inconsistent with the position that we've already done it. We didn't take the position that the circuit had already ruled on it. That's what you seem to be saying now. Yeah. What our position is is that those reasons have already been ruled upon and either rejected as a matter of law or are factually in error. It appeared to me they also violate the law of the case as well, simply because those were the precise questions that the district judge relied upon in subsequent litigation involving the same parties and involving the same issues. That's the reason I believe that applied. That's the reason I suppose I haven't really featured it. But nonetheless, even if you assume you're right, those reasons have still been rejected by this Court. And how would it be fair for my clients to be denied prejudgment interest under the idea that they don't have any standing to recover, even though prejudgment interest is a compensatory issue, and that was reserved for the Court to decide. It was never submitted to the jury. Why couldn't the trial judge find that $3.5 million is adequate compensation? Well, it can't be adequate compensation in terms of including prejudgment interest because, as I say, that was reversed. That was reserved to the Court. No, that's not what I'm asking you. I'm asking you why can't the judge find that taking your evidence as you presented it, $3.5 million is adequate compensation? Why is that clearly erroneous? Well, it's clearly erroneous because it doesn't consider the issue of prejudgment. No, she considered it and found that the judgment as issued adequately compensates your client. But how do you do that when it's never considered by anyone? That's what that actually would mean. She considered it and decided it wasn't appropriate. She can just pick any number at all? No. The jury came up with the number, and she concluded that that adequately compensates your client. Some of the damages were incurred after trial, I take it, are for future profits. Is that right? Well, there were future cash flow streams that reduced the present value. That's correct. And she concluded that the judgment in that amount adequately compensated your client. Prejudgment, why is that clearly erroneous? Well, as I understand it, even if it's an abuse of discretion and abuse standards, there would still have to be compliance with the law and so forth. That is essentially a kind of an unlimited or a whim standard because the issue was never even considered by anyone else. She just simply said, I considered it. You got a lot on the side. But she's the judge. I mean, she's the one you go to. She considered it, and you lost. Why is that clearly erroneous? Because it's not based on anything except a whim. So you're saying because we knocked her over the first time, you want us to knock her over the second time because she did something on a whim, and yet she used the Wessel case, which is our case, to say that she's going to determine as a question of fairness whether or not she should get prejudgment interest. That doesn't sound like a whim. She then goes through the analysis of the multi-dollar, million-dollar award, and she says, I think that you're not entitled to prejudgment interest. Now, are you saying there's no legal basis, no factual basis in her decision? And on what basis would we overturn her other than it's a whim or that she's made an error twice in a row? Because as I read our decision in 1991, zero on prejudgment interest. There isn't anything at all, no rationale, nothing relative to prejudgment. It has only to do with the rendering of the judgment and how we interpreted the evidence versus the district court and the jury. And we decided the evidence differently than they did, so we reinstated your verdict. But the verdict didn't include prejudgment interest. It was never considered before, correct? I don't think that's right. It was considered before. And was it? We asked for it prior. We asked for it prior. Was it rendered in the verdict? No. Was there a judgment entered? That's correct. It was not reserved. I mean, it was reserved to the district judge. I know. But was there a judgment entered for prejudgment interest or not? In the first trial? Yeah. The answer is no. Okay. And all we said was we reinstate the jury's verdict. We didn't say anything about prejudgment. So we never addressed this issue before, period. Right? I want to be clear about something. I think you asked me earlier. Was there a denial? Was there a judgment entered as a prejudgment interest? And the answer was yes, there was a denial of prejudgment interest. Okay. But you appealed. You appealed. In our remand, as I said, we reinstate the first jury's verdict. We said nothing about the judgment. If we had reinstated the judgment, I suppose it would include whatever was in the judgment. But we reinstated the verdict. Is that right? Yes. Okay. Although we had asked for it. And we asked the district judge for it separately. She denied it, and that's when it got appealed. Fine. All I know is that what we said, this Court said the first time is we reinstated the jury verdict. Okay? And you're just saying that there's no basis for the judge denying you prejudgment interest. That's all. Well, I can't find it. Because most of the reinstatement of the original verdict was based on standing issues. I mean, it was the vast majority of what was there. And it's a compensatory. Prejudgment interest, as I understand it, is a compensatory. I don't see anything in the district court's order denying your prejudgment interest has anything to do with standing whatsoever. It just talks about the laws of the circuit, that the prejudgment is not necessarily specified anywhere in FHA cases, but it's not precluded. And she went through an analysis. I see nothing on standing whatsoever. Well, the way that standing comes into it is that she relied upon the same reasons. Those were her balancing of the equities analysis, I assume, or her determination of fairness, which relied on the earlier reasons that were reversed in connection with the new trial grant. So that's where the standing issue is. But apart from that, I don't actually see any analysis. But. Five minutes. What is your. I'm sorry. I thought I had to reserve some of that time. Oh, that's fine. You've got a little over five minutes. So I have more. You have five minutes and 10 seconds. You can reserve whatever you want of it. OK. I was going to reserve five. That's fine. Is there going to be a division of time on this part of the argument between the. All right. All right. I am Kevin Patrick McBury. I do represent the city of Desert Hot Springs. Your Honor, in taking a look at this case, the first thing that we have to look at, rather than the balancing of the equity issues, is to avoid the assumption that was made by the district court. This assumption was made without actually making a decision, and that assumption was that the statute in and of itself provides for prejudgment interest. A review of the cases relating to the Fair Housing Act, an act that was enacted in 1968, so it is some 35 years old, and was amended quite extensively in 1988 with, again, another 15-year history, doesn't display for us a single case that in any way, shape, or form, gives us prejudgment interest being given to a plaintiff in a Fair Housing Act case. But the court also recognized there was no case law against that. What the court said was it was a question of whether there was adequate compensation to Silver Sage in this case. Then it recited what we did. The court, in one paragraph, said, well, the circuit found that the weight of evidence, that the word, the jury's award of $3 million, was not against a clear weight of evidence. And then it defined its duties under this situation. Here the court was not asked to determine if a compensation award was supported, but whether the award adequately compensates Silver Sage. And then she just finally says the multimillion-dollar verdict adequately compensates no prejudgment interest. I think what counsel is saying is there's no rationale. It's sort of a whim. She said, well, the circuit said $3 million is fine because the evidence supports it, and that's enough for you. Now, how are we supposed to interpret her order? I think there's no difficulty at all in interpreting her order, and I think your argument or your discussion concerning this outlines it well. The initial decision of this court does not in any way, shape, or form, simply come down and say there shall be anything that Silver Sage wants, if yes. The initial decision of this court in no way, shape, or form ruled relating to prejudgment interest. Indeed, one could argue just the opposite. That is, is that the issue of prejudgment interest was raised by a felon previously, and there was no ruling on it, effectively a denial, by this court. Assuming that that was wrong, this court enlarged the mandate and allowed the district court to hear the matter again. The district court is allowed, once again, to take a look at the factors, and in taking a look at those factors, it's able to use its discretion and use it in a variety of ways, taking a look at a number of things. Number one thing, in terms of determining whether or not a $3.5 million award or $3 million award is adequate, is saying, what are the appellants out of pocket? And when one takes a look at what the appellants are out of pocket, you see that they were out of pocket about $118,000. And $35,000 for that is quite questionable. So when we're talking about prejudgment interest, we're talking about profits and earnings that are to be earned into the future that are reduced for present value. And in terms of reducing them for present value, they're reduced to the day of the testimony of the expert at trial. So, in that case, what we have is full compensation. Well, let's stop just a second, because I'll follow you down this road, and then I'll be in Never Never Land. What was her standard of review, and what is our standard of view of what she did? Because what you're talking about is history of the case. And certainly there's a great history of the case, because first you got a $3 million verdict, then you got a new trial with a $1 nominal, and then you got our court saying reinstate the $3 million. And certainly in that analysis, in our analysis, we went through all the factors. You know, what their loss was was going to be 55 years, and they would never pay off the loan, and they'd never make any profit, and all that stuff. Are you saying we have to look at the history to read into what she said in two paragraphs, that it was reasonable? What is her standard of review, and what's our standard of review? I'm saying before you even get to that, what you have to do is take a look at the statute and get away from the decision or the assumption that's made by the district court judge. Let's take a look at the Fair Housing Act and see, does it in any way, shape, or form allow for prejudgment interest? The Act in and of itself does not provide that. Everybody concedes that. That's not even the issue. I don't think anybody's going to say that there's any law that says that under the Fair Housing Act that you're specified that you must receive it. The question is, how do you judge when an application is made? Is it precluded by law? Do you have any law that says they can't have it, period? No, Your Honor. Your Honor, what we can do is we can take a look at the statute and see what is allowed under the statute. And then when we take a look at what's allowed, we see that damages are allowed. We see that punitive damages are allowed. We see that extraordinary relief such as injunction is allowed. But we don't have anything here relating to prejudgment interest. By way of example, when you ask, is it precluded, I imagine one could say, is it precluded that someone could be thrown in jail? This is not a criminal statute. My argument to the court then is, yes, it is simply not allowed. The court only has the power that's given to it by the Congress. And in this case, the statute doesn't provide for any prejudgment interest. The next thing that we have to do in taking a look at this, following along with the court, let's take a look at the different factors that the court is able to look at once it left over the initial decision. One which I think that this Court ought to make, that is, is that there is no right to prejudgment interest. Having left over that. Kennedy. Is it the discretion of the judge in whether or not to allow prejudgment interest? Is that the standard review? If she can. Your Honor, assuming that prejudgment interest is allowed, it falls well within the discretion of the district court judge. We have that from both the Blau case and the Wessel case, both of which were determined by the circuit. And in taking a look at the discretion of the court, those cases, including the Yellow Tab case, outline the different things that the court can look at in terms of fairness. The determination that has to be made, has the plaintiff been adequately compensated? And this Court is able to take a look at this with the long history that it has. But your basic position is that we never get there. Because we look at the statute, and we apply the age-old adage to enumerate is to exclude, and Congress sets out three things that can happen, and prejudgment interest in one of them, end of story. I think so. But if we leap that hurdle, then you're saying that there's no abuse of discretion here. Absolutely. And that's really the key in this case, is, you know, number one, I think it would be a mistake to leap that hurdle, because we don't have a case that allows for that, certainly not in the Ninth Circuit. Actually, there's none anywhere, is there? Well, actually, fascinatingly, in the reply brief, appellants did give us, SilverState did give us, a case of South Suburban Housing v. Berry. That's a Seventh Circuit case that they gave us. And if the Court wants the site, I'll be happy to give it to the Court. Well, we have it, I think. Okay. In that case, when one takes a look at it, they said that that case provided for prejudgment interest. I beg to differ, and I think that a careful reading of South Suburban Housing gives you a markedly different story. What a markedly different story is, is that in South Suburban Housing, the defendant entered into a consent decree.  To describe Ms. Berry as recalcitrant would be a magnificent understatement. Be that as it may, the Court at that time entered what effectively was a contempt citation or a contempt judgment. And I say that effectively, not in fact. And in that included prejudgment interest. I thought I remember that case. It did not. The issue in the case was not whether prejudgment interest could be awarded. It was an enforcement of an agreement between the parties. Exactly. And so we're still left with the fact that this, we're not talking about a contract between two parties in a diversity case. We're talking about a fair FHA case. There's nothing in the Act. And that's where you want us to go. That's it, exactly. And I guess we're cutting out an area of the law that's not the general law of judgments, but this is the law of what you can get in an FHA case. Exactly. No, this isn't the general law of judgments by any stretch of the imagination. And as you of course can see in taking a look at the various cases that have been cited by both of the parties, there are certain areas in terms of the general law of judgments that differs. By way of example, if we take a look at the FELA cases, we see the history of the FELA cases, and for lack of a better word, Federal common law in FELA cases specifically  If we flip it around, if we go back to the Admiralty types of cases, once again, Federal law applies prejudgment interest in those types of cases. And in fact, one of the lead cases that I noted in that area from the Milwaukee versus Cement case was a 1796 case. So we have a fair amount of history there. But in this case, what we have is we have no cases in the 35-year history of the Act that provides a prejudgment interest. There's no reason for us to start. And certainly, if the court is to leave that hurdle, this is not the case to do it in. If we take a look at this also in terms of why we don't do it in this case and why it's done in other civil rights cases, take a look at the language in other civil rights statutes in terms of the empowerment that's given to the court, and you'll see that it's very broad. You'll see that no matter how broadly you attempt to construe the language of a fair housing act, you literally have to be making something up in order to award prejudgment interest in this case. One of the things, among the factors that the district court can look at in terms of making a determination as to fairness, the first point that I made was that the out-of-pocket money sustained by the plaintiffs in this case was alleged, according to plaintiffs' experts, to be $118,000. You will see that the money that's earned by the plaintiffs, the overwhelming majority of the money that's earned by the plaintiffs, is earned over the 55 years, and then it's reduced to the value of the day of the hearing in court just before the verdict and the entry of the judgment. You take a look at this case also and see how it was tried initially in terms of the actions of the city, and you see that this was tried on an effects theory case, nothing more, nothing less. This isn't a case involving going back to South Suburban Housing, where you have someone who is recalcitrant, who is with an animus, or anything of that sort. You don't have that with this city by any stretch of the imagination, and indeed, two juries have looked at the facts concerning this case to see if there's any animus or something of that nature, and two separate and distinct juries did not give punitive damages in this case. For these reasons, I submit to you that there is no reason in this case to, number one, leap over to the statute, and number two, to find that there's an abuse of discretion on the part of the district court judge. If the panel has any questions. I guess not. Thank you. Thank you. I guess the first observation I'd make is that the current status of things, as I understand it, from the Supreme Court is that the actual quote that I think is in our reply brief says that our cases since 1933 have consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes a prejudgment interest component. Is that an FHA case? No. So you're talking general judgment law versus law that may apply or not apply to the statutory remedies in the FHA Act. Well, if your honors decide that the prejudgment interest is not available in a Fair Housing Act case, then obviously this doesn't matter. This quote pertains to the notion that it is available in that type of a case. The district judge seemed to assume so. At least in my reading of what she did, my understanding was that she did, in fact, assume that it was available and then deny it because she thought it was fair to do so. But my point in mentioning the specific quote also is the second point, which is that they're really talking about what makes actual compensation a whole for an injury. That's really what they're speaking of there. And as we all know, and in this case is actually a good example of it, is over four years from the time it was filed to the time the judgment was actually rendered in the plaintiff's favor. That's a long time to wait. So every defendant has a moral hazard, if you will, arises there, because they don't have any incentive to get to court quickly. They don't have any incentive not to drag their heels and so forth. And I can tell you in this case, since we're reviewing what the damages history of the case was and so forth, we didn't get into that as a special factor because we didn't think we needed to. But the city dragged us through discovery every step of the way, and they were sanctioned, I believe, a total of four times. So if one looked and applied the analysis that's in Buehler, we should have gotten prejudgment interest for that reason. But our focus is really on what's the evidence. Because if the standard is that you don't get full compensation unless you get the interest, if that's the standard, and the district judge has that reserved to them as a question, prejudgment interest, which means, of course, it was never presented to the jury at all. The jury never considered it. How is it fair that essentially you end up with nothing in that situation? Well, Mr. McGarry makes the point that the bulk of the judgment was for future profits, reduced to present value as of the date of the trial. Right? Is that true, as a matter of fact? No. It is, I believe, in terms of bulk. It depends on your definition, I suppose, of bulk. Well, there was $180,000-some-odd, he says, was out of pocket. Well, that's his version of out of pocket, yes. But the problem really is that the judgment for this type of financing was complicated financing, but a rental housing construction program for the State of California. And the developers actually get some money from a management fee that's spread out over the 55-year project life, then reduced to present value. But the bulk of their fees, if you will, actually came from syndication fees and fees to be earned. Fees to be earned. A developer fee that was earned at the time the development went forward. How much was earned at the time of the trial? Had it already been earned? I believe it would have been about two-thirds, if I remember the math of it correctly. Because I believe that the developer fee was around $860,000 or $70,000, and I believe that the syndication fee was approximately the same number, as I recall. So the rest would have been cashed out. That was then due, earned, and payable right then and there? Yes, that's correct. That's right. So that particular component was reduced to present value. That's correct. But it's not as if all the cash flow streams and everything that the developer was going to get was paid out over 55 years. Only the management fee was really in that category. That's basically what that was. So I'm still left with this issue of what is the district judge's rationale for what was done here. It seems like to me you're arguing, as you argue for removal from the deliberations, that the first time around she wanted to remit it here. The second time around the jury gave $1. And the third time around we told her, no, reinstate the verdict. And then she said, well, you reinstated the verdict, but you got enough. That's what you're trying to tell us, that she didn't use any rationale. And she said, well, if the Ninth Circuit says that's enough, that's it. Is that what you're – I mean, I'm being kind of candid, but I mean that's about what you're saying and that's about what she says. Well, she says, yeah, that's enough. But, I mean, let's assume that the evidence had been that we had $10 million worth of damage. No, I'm just saying that you're – I understand your argument that when she says that's enough, she didn't give you the proper reason legally to say that, to deny her. To me, that's a winning standard, Your Honor, because, I mean, really, what is enough? I mean, what if we had $10 million worth of damage? I hear you. That's what I'm saying. I don't hear you. The last point I'll make is that on this actual – on the idea of whether the statute contemplates or does not contemplate pre-judgment interest, the statute refers to actual damages, and I think there's a reasonable reading that that would include compensatory-type damages, which certainly includes pre-judgment interest. So there's an argument, I think, that at least it's not excluded, if not explicitly stated, that you get pre-judgment interest. And the last thing, on the South Suburban case, we've never actually argued that there was an analysis related to pre-judgment interest there. There is a mention of it having been awarded and affirmed. All right. Thank you. The case just argued will be submitted.
judges: Brunetti, T.G. Nelson, Silverman